Bank of Galliopolis *vs* Trimble, &c·

ERROR TO THE GREENUP CIRCUIT.

*Corporations. Lex fori. Comity.*

PET. & SUM.

*Case* 139.

| 6bm599 |
| 106 845 |
| 6bm 599 |
| 125 397 |

JUDGE BRECK delivered the opinion of the Court.

*July* 7.

IN October, 1839, David Trimble and the other defendants in error, executed their note to the President, Directors and Company of the Bank of Galliopolis, for two thousand dollars, payable in three months. Upon this note the Bank, in June, 1840, sued by petition and summons, in the Greenup Circuit Court.

The case stated.

The defendants filed various pleas,. and the case was continued till 1841, when additional pleas were filed, and among them a plea of set-off for Bank notes issued by the Bank and held by the defendants, to the amount of the note sued on. Subsequently, by agreement, all the pleas were withdrawn, except the plea of payment, and the defendants had leave to give in evidence any matter which could be relied upon by special plea.

In October, 1843, the law and facts were submitted to the Court and the case tried.

The Court was of opinion that the defendants, in virtue of the laws of the State of Ohio, where the Bank had been chartered and was located, had a right to set-off the notes of the Bank against the note sued on, and accordingly rendered a judgment in bar of the plaintiff's action, and for the defendant's cost.

Judgment of the Circuit Court.

To reverse that judgment, the plaintiffs prosecute this writ of error.

In the revision of the case we will first examine the question whether the Court was right in allowing the set-off.

It appears that in February 1841, the plaintiffs assigned one thousand dollars of their claim to one Nash and the resedue to one Brazier. These assignments, it may be proper here to remark, did not, according to the case of *Elledge* vs *Straughn*, (2 *B. Monroe*, 81,) transfer the

A partial assignment of a note transfers no right of action to the assignee.

BANK OF GALLI-
   OPOLIS
     vs
TRIMBLE, &c.
legal title of the note in the suit to the assignees. *That* still remained in the assignors, but in trust for the benefit of the assignees.

At what precise time the defendants acquired and became the holders of the notes, which were the subject matter of the set-off, does not appear. The presumption is almost conclusive that it was not till long after the commencement of the suit, and is also justified that it was not till after the defendants had actual notice of the assignment to Nash and Brazier.

At the July and October terms 1840, the defendants filed several pleas, but no set-off was plead or relied on, and the cause was continued on their motion. In January, 1841, the Bank failed, and shortly afterwards its notes fell down to between 10 and 20 cents to the dollar. In March following the defendants tendered to the Bank the notes sought to be set-off. There is no proof whatever of their holding them prior to that time. Notice of the transfer was given some time before the tender. The defendants, therefore, in our opinion, failed to show that they were the proprietors or holders of the notes prior to the assignment, and of course to the commencement of the suit. The *onus* of proving that fact devolved upon them: *Ogden* vs *Carnley,* (2 *Johnson's Rep.* 277.)

Assuming then, that the set-off was not acquired till after suit brought, and after notice of the assignment, it follows, according to the laws of Kentucky, that the defendants could not render it available against the plaintiffs, had there been no assignment; nor, waiving that view of the case, as against the assignees, who were the beneficiaries and entitled as such to have their rights protected: *Hawthorn* vs *Roberts,* (*Hardin's Rep.* 70;) *Bibb* vs *Saunders,* (2 *Bibb,* 87; 1 *Litt.* 206,) upon the first point, and upon the second *Littlejohn* vs *Stores,* (3 *John. Rep.* 426;) *Raymond* vs *Squire,* (11 *John. Rep.* 49;) *Briggs* vs *Dow,* (19 *John. Rep.* 96.)

The laws of a sister State regulating set-offs, can have no operation in this State, in a suit on a note.
We are not satisfied that the statutes of Ohio, which were in evidence upon the trial below, and which are copied into the record, would have authorized the set-off, had they been in force in Kentucky and binding upon the Court. But we cannot admit that those statutes by any

<div style="float:right">BANK OF GALLI-<br>OPOLIS<br>vs<br>TRIMBLE, &c.</div>

rule or law of comity, can have any operation or are entitled to any consideration by the Courts of Kentucky, and more especially if in conflict with our laws, or the recognized rules of practice in our judicial proceedings.

Set-off is a mode of defence, essentially, not a part, connected with the remedy, which according to the well settled and universal doctrine is governed by the law of the *forum*, and not by the *lex loci contractus*. The forms of remedies, the modes of proceeding and the execution of judgments, are to be regulated solely and exclusively by the laws of the place where the action is instituted. (*Story's Con. Laws*, 468-9; *Ibid* 481; *2 Kent*, 462.)

<div style="float:right">Set-off is con-<br>nected with the<br>remedy which is<br>governed by the<br>law of the *forum*<br>and not by the<br>*lex loci contrac-*<br>*tus.*</div>

If then there were no other questions in the cause, it would result that the judgment of the Court below must be reversed. But other questions are raised and relied upon by the defendants, involving the right of the plaintiffs to sustain their action, and which will now be noticed.

And 1st. It was contended that the charter of the Bank had been forfeited before the note in question was executed.

2dly. That the charter expired according to its terms after the commencement of the suit, and before the trial.

In regard to the first objection, it is a sufficient answer: that the defendants were estopped to deny that there was such a corporation, by the very terms of their note, in which they "promise to pay the President, Directors and Company of the bank of Galliopolis," &c.

<div style="float:right">Obligors in a<br>note given to a<br>corporation are<br>estopped to deny<br>the existence of<br>the corporation.</div>

Besides, we entirely concur in opinion with the Circuit Judge, that whether there had or not been a forfeiture of the charter by *non user or misuser*, or for a failure to comply with the requisitions thereof in any respect, was a matter which could not collaterally have been gone into and rendered available in this controversy. The question of forfeiture could only be determined by a direct judicial proceeding: (*2 Kent* 312.)

<div style="float:right">That the charter<br>of a corporation<br>has been forfeit-<br>ed can only be<br>made to appear<br>by a direct pro-<br>ceeding, not col-<br>laterally.</div>

As to the second objection, it seems to us that the expiration of the charter was in effect an abatement of the suit, and presented an obstacle to the further prosecution

<div style="float:right">But if a charter<br>of a Bank, char-<br>tered in one<br>State, expire by<br>its terms, suits</div>

BANK OF GALLI-
OPOLIS
vs
TRIMBLE, &c.

depending in the
name of the cor.
poration in other
States, abate and
a subsequent
statute of the
State of the cor.
poration cannot
have the effect
to revive the
suit.

of it, for the removal of which the laws of Ohio could
not be relied upon and rendered available.

The charter of the Bank according to its terms expi-
red on the 1st. January 1843; after that period we are
aware of no rule of practice or statutory provision in Ken-
tucky, or of any common law principle, which authorized
the further prosecution of the suit, in the name of the ex-
pired corporation. The abatement of the suit was a ne-
cessary consequence of the expiration of the charter; as
much so, as if the plaintiff had been a natural person and
had died. The only enquiry then is whether the further
prosecution of the suit could be sustained by the laws of
Ohio. We find in the record. duly authenticated copies
of two statutes of the Ohio Legislature, one passed on
the 7th March 1842, and the other on the 10th March
1843.

The first act provides substantially that upon the disso-

The statute of
a sister State
providing for the
prosecuting of
the rights of
the corparations
which may ex-
pire by the terms
of their charter
*in the name* of
the last mana-
gers as *trustees*,
does not have
the effect to re-
vive in Ky. a
suit brought in
the name of such
corporation.

lution of any corporation, by the expiration of the term
of its charter or otherwise, the directors or managers of the
affairs of such corporaticn acting last before its dissolu-
tion, shall be constituted trustees of the creditors and
stockholders of the corporation; and vests them with full
power to settle the affairs of such dissolved coporation.
And it further provides that the *persons*, so constituted
trustees, "shall have authority to sue by the name of the
trustees of such dissolved corporation."

The act of March 1843, passed after the charter
expired, and which purports to be amendatory to the act

Nor will such
statutes passed
after the charter
has expired, de-
claring that suits
pending at its
expiration, shall
not abate, have
an operation in
Ky. to keep alive
a suit in the
name of the cor-
porotion.

of 1842, provides that no suit pending in the name of
any Banking corporation, shall abate or be discontinued
by the dissolution of such corporation, but such suit may
be prosecuted to final judgment by the creditors, assig-
nees, receivers or trustees having the legal charge of the
assetts of such *dissolved* corporation, in the corporate
name thereof. This act also provides that if any suit,
which may have been pending, in the name of any such
dissolved corporation, shall have abated prior to the pas-
sage of the act, by means of the dissolution of such cor-
poration, the same shall be and is revived, and shall be
proceeded in by the creditors, assignees, &c., having the
legal charge of the assetts of such dissolved corporation,

BANK OF GALLI-
OPOLIS
vs
TRIMBLE, &c

in the name of such corporation, in all respects as if such abatement had not occurred. The corporation of the Bank of Galliopolis is no doubt embraced by these acts, which in Ohio would have authorized the prosecution of this suit to final judgment in the coporate name, after the expiration of the charter. But this authority to proceed with the suit in the corporate name, even in Ohio, would not result from any resuscitation or extension of the dissolved corporation; for there is nothing in either of the acts, indicating any intention to revive or extend the charter of any such corporation for any purpose whatever.

The object of the acts seems to have been to provide for the preservation and administration of the effects of dissolved corporations. For this purpose trustees are appointed, and particular modes of judicial proceeding are authorized.

Assuming then, that there was no revivor or extension of the charter of the Bank after its expiration, and that the corporation was dissolved and so continued, the question is whether the laws of Ohio, regulating the mode of judicial proceeding in such case, can have any extra-territorial operation, or whether by any rule of comity, the Courts in Kentucky are bound to notice and be governed by them? We think not. These laws as to the revival and further prosecution of a suit in the name of a dissolved corporation, are not only applicable to the remedy, but they emphatically provide and regulate it. That the laws of Kentucky, the *lex fori*, should govern as to the remedy, is, as we have seen, well settled upon principle and authority. There certainly can be no justice or propriety in authorizing a foreigner to prosecute a suit in the name of a dead plaintiff, a dissolved, extinct corporation, in virtue of the laws of Ohio, when the same privileges are denied by the laws of Kentucky to its own citizens. The rule laid down by that eminent jurist, Justice Story, in his conflict of laws, page 469, upon this subject, is undoubtedly the correct one.

He says: "All, that any nation can be justly required to do, is to open its own tribunals to foreigners, in the same manner and to the same extent as they are open to

Comity requires that the tribunals of the States shall be open to

BANK OF GALLI-
OPOLIS
vs
TRIMBLE, &c.
other States as
they are to the
citizens.

its own subjects, and to give them the same redress, as to rights and wrongs; which it deems fit to acknowledge in its own municipal code for natives and residents."

Upon the whole then, we are of opinion that upon the termination of the charter of the Bank, this suit was virtually abated, and that the Court below instead of hearing and deciding it upon the merits, should have dismissed it. The proceeding in regard to the trial was *coram non judice*, and the judgment, therefore, a nullity. But as it is possible other testimony may be adduced upon the return of the cause in support of the action, the judgment is reversed and the cause remanded that a new trial may be granted and further proceedings had.

The dissent of Chief Justice Ewing.

I dissent from so much of the opinion just read, as abates

Foreign corpora-
tions, by the
rules of comity
observed by civi-
lized communi-
ties, are allowed
to contract and
sue in their cor-
porate name,
within other
States, when the
contract or suit
is not repugnant
to the law of the
place or its es-
tablished policy.
And by the same
rule it should
permit a suit
brought in the
name of a for-
eign corporation
to progress in
conformity with
the provisions of
a statute, tho'
the charter had
expired by its
terms.

the suit regardless of the statutes of Ohio, which authorize all *suits pending*, to progress in the corporate name. The statute of Ohio creating the charter, has no force here; yet by a rule of universal comity, among all civilized nations, repeatedly recognized by this Court, a corporation created by the statutes of a foreign State, has been allowed to make contracts and sue here, in its corporate name, whenever such contract or suit is not repugnant to our laws, or any established policy of the State: *Lathrop* vs *The Commercial Bank of Scioto*, (8 *Dana*, 114.) That same rule of comity which would so far respect the statutes of Ohio, as to authorize the suit to be instituted and prosecuted here in the corporate name, while the corporation is in being, should so far regard the statutes of the same State reviving and continuing the right to perpetuate the suit in the name of the defunct corporation, as to prevent its abatement. It may be as well said that the statute of Ohio, which gives the right to sue in the corporate name, applies to and regulates the *remedy* only, as that the perpetuation of the suit in the corporate name applies to and regulates the remedy only. Both statutes prescribe a remedy unknown to our laws, yet the refusal of remedy in either case, amounts to a *denial of right*. And that comity which would allow the

remedy in the one case, as the means of enforcing a *re-cognized right*, should not, with a view to the same end, refuse it in the other. One and one essential *attribute* of a corporation, is the right to sue in the corporate name; that attribute is revived and perpetuated as to all suits pending at the time of its enactment, and should be so far respected by the Courts here, upon principles of comity, as to allow the suit to progress in the corporate name, as the *only means* of enforcing an *undoubted right*.

Our statutes have provided a mode and regulated the manner in which the chose in action of deceased *natural persons* may be collected, namely, the appointment and due qualification of an administrator, here, in whom the legal title and right to sue, and revive and progress with suits pending, are vested, and there exists no necessity or propriety, upon principles of comity or otherwise, as the means of reaching the asserted right, to depart from our own established modes of proceeding, out of comity or respect for a statute of Ohio, authorizing the suit to progress in the name of a dead man. The cases are, therefore, as I conceive, not analogous. Besides, as a statute of Ohio may create and bring into being a corporation or *artificial person*, which will be respected as such by our Courts, so a statute of that State can revive and perpetuate the *being* of such artificial person, with all, or a part of its attributes, which should equally be respected by our Courts. But a statute of Ohio cannot *create* or *bring* into being a *natural person*, or invest him with the active attributes to sue or progress with a suit; and should such an attempt be made, there is no principle of comity among civilized nations, which should induce them to regard such unusual attempt, or render it proper, with a view to the ends of justice, to pursue it.

*Beatty* for plaintiff: *Hord, Apperson and Payne* for defendants.