## BONDURANT v. CRAWFORD.

1. **Contract: STAMPS.** If an agreement is executed in duplicate, each of the parties retaining one; but only *one* of which is stamped, *that* is a binding contract though the other is not stamped.

2. —— FALSE REPRESENTATIONS. It is not universally true, that false representations, made as an inducement to a contract, will not constitute fraud if the other party had an opportunity to detect the falsehood.

3. —— OPINION. But, while this is so, it is also true that the law requires of a party a certain degree of vigilance and caution, and he cannot make the mere opinion of another a ground of fraud, especially where the opinion relates to the value of an article, or what will happen in the future, in relation to which each party has equal opportunities of judging for himself.

4. Instructions: ERROR WITHOUT PREJUDICE. The giving of an instruction which is, strictly speaking, erroneous, is not sufficient ground for the reversal of a judgment where the whole record shows that the appellant was not prejudiced thereby.

*Appeal from Poll District Court.*

THURSDAY, APRIL 4.

STAMPS: FRAUD: ELEMENTS AND ESSENTIALS OF, ETC.—— This action is brought upon the following written contract, entered into by the parties, viz.:

"Article of agreement made and entered into this 25th day of August, 1864, between A. C. Bondurant and George Crawford, both of Polk county, Iowa, witnesseth: That the said Bondurant agrees to sell to the said Crawford one hundred acres of the corn now on the farm of the said Bondurant, seventy acres of the corn to be put into shocks, in good condition, and thirty acres standing on the stalks, and give the use of two feed lots, wells and one pump, and three troughs, also board his hands while feeding said corn. For which corn the said Crawford agrees to pay to the said Bondurant the highest price that any stock feeder may pay for that quality of corn in Polk county, between this date and the first day of January, 1865, and return the lots, pumps and troughs in as good condition as when received; also pay a fair price for boarding said hands; each party to be responsible for all damages that their stock may do to each other's property; sixteen cents per bushel of said corn to be paid in hand, and the remainder as soon as the price is determined. The corn to be

measured as soon as commenced feeding, or by the 1st of October, 1864.

> "A. C. BONDURANT.
> "GEORGE CRAWFORD.
> "By J. McConnell."

Plaintiff alleges that the defendant, under this contract, entered upon and occupied the feed lots, wells and troughs mentioned in the agreement; that plaintiff delivered and defendant accepted the one hundred acres of corn, which measured 5,273 bushels; that, at the contract price, it was worth seventy-five or eighty cents per bushel, and that there is due the plaintiff thereon, after deducting payments, about the sum of $1,700 and interest.

The *answer* denies any indebtedness; alleges that the agent, McConnell, had no authority from the defendant to execute the contract; that defendant refused to ratify the contract, without a further understanding as to the meaning of the words, "any stock feeder," as they occurred in connection with the price to be paid for the corn; that on the 25th of September, 1864, the parties had a personal interview in regard to said contract, and it was then expressly understood that the term "any stock feeder," etc., should mean, not farmers, but *only* those feeders who should feed at least forty head of cattle and purchase the corn for them; that defendant or his agent was induced to make said contract, and to pay the price therein mentioned for corn, because of the false representations of the plaintiff, to the effect that he had good feed-yards and *wells, and plenty of water* in them for supplying from two hundred to six hundred head of cattle, and the water proved to be insufficient; that there was only one well that had a regular supply of water, and this was wholly inadequate to water the cattle; that in consequence of

Bondurant v. Crawford.

the want of water, the cattle did not thrive, but grew poor, and some twenty of the hogs died.

It is alleged that the representations, as to water and other accommodations for feeding stock, were false, and that defendant (who was a stock buyer and feeder, and who resided in Des Moines some twelve miles from plaintiff's farm) relied upon these representations; and that these were the controlling considerations in inducing McConnell to make and defendant to ratify the written contract upon which the action is brought.

For these alleged fraudulent representations and for the damages alleged to have resulted to his stock from the want of water, etc., the defendant claims, by way of cross action, damages to a large amount.

Upon these issues the cause was tried by a jury. The taking of the testimony on the trial, consumed nearly four days, and it is all in the record, occupying three hundred and ninety closely written pages.

A large number of instructions to the jury was given, modified, and refused.

The jury returned a verdict for the plaintiff, which is based upon an allowance of seventy-five cents per bushel for corn, and no allowance of any damages to the defendant, in respect of his cross action.

Defendant appeals.

*E. J. Ingersoll* for the appellant.

*C. C. Nourse* for the appellee.

DILLON, J.—I. The contract was executed in duplicate, each party retaining one. That kept by the defendant

1. CONTRACT: stamps.

was alleged in the petition to have been duly stamped, and defendant was notified to produce it on trial. An admitted copy was attached to the petition. Defendant failed to produce the stamped original,

which was in his possession. The plaintiff, on the trial, offered to read the copy attached to his petition, to which the defendant objected, on the ground that plaintiff had one of the originals, and it was not stamped. The court overruled the objection, deciding that, if one agreement is stamped, and defendant, after notice, refuses to produce it, plaintiff may read a copy. Defendant excepted.

This ruling was right. The law does not, in such cases, *require* duplicate originals. If an agreement is executed by *both* parties and is duly stamped, *that* is a binding contract upon both parties, though the other contract may not be stamped, and for that reason not binding as a contract.

II. The defendant produced testimony on the trial, tending to show, and proper to be laid before the jury as showing, the following state of facts : That the defendant resided in Des Moines, and was largely engaged in the business of buying and fattening cattle for shipment and market; that plaintiff's farm was some twelve miles distant on the prairie ; that plaintiff represented to defendant, before the written contract was made, and as an inducement to get a large price for his corn, that he had good feed-yards and accommodations for feeding cattle, and three good stock wells which would furnish abundant water for all the cattle the defendant wished to feed with the corn he proposed to buy of the plaintiff.

There was also testimony tending to show that plaintiff made similar representations to McConnell (defendant's agent) at the time the contract in suit was executed ; also evidence tending to show that McConnell had no authority to execute this contract, and that defendant, on his return home, was dissatisfied with it, and twice visited the house of the plaintiff to have an interview with him, and a further understanding as to the meaning of the word " stock feeder," before he would ratify the contract.

There was also evidence tending to show that the cattle and hogs suffered greatly for want of sufficient water, and did not improve or fatten while kept at the plaintiff's farm. There was also evidence that the defendant had been at plaintiff's place the spring before, and " herded " cattle there, but did not then rely upon the plaintiff's wells for water.

In order to test the correctness of certain instructions complained of by the defendant, this general outline will be sufficient. It may be remarked that the plaintiff produced evidence tending to show that he did not make the alleged representations in respect to water, etc., as claimed by the defendant, and also facts tending to show his good faith in making the contract, and throughout the whole transaction.

Under these circumstances, the court charged the jury, " that, if you find that the plaintiff made the alleged representations, and that such representations were false, and made for the purpose of inducing the defendant to purchase his corn at a high price, and you further find that the defendant believed and acted upon such representations, *and that he had no convenient opportunity to know whether such representations were true or not*, at the time he ratified said contract, if he did so ratify it, then he would be entitled to whatever damages he sustained, by reason of such false representations."

The defendant asked the court to charge that " he had a right to rely upon representations made by the plaintiff, as to the quality of corn, wells, water, yards and troughs, instead of going and examining for himself; and if any of such representations, material and beneficial to the defendant, were untrue, then plaintiff must respond in damages for the injury which resulted to the defendant by reason of such false representations." This the court refused to give without this modification, viz.: " But if

you find that defendant was on the ground, and had an *opportunity* to, or did examine the corn, wells, water, stockyards and troughs before he ratified said contract, then he cannot claim anything on account of false representations."

Without further quoting from the instructions, we may observe that they lay down to the jury this principle, to wit: that, though plaintiff made false representations, and though defendant relied upon them and was damaged thereby, still, if he had *opportunity* to ascertain their untruthfulness before he ratified the contract, and neglected or omitted to do so, he cannot in law complain of the fraud.

. This case, though very lengthy, really turned upon one main point; and that was, the alleged fraudulent representations of the plaintiff respecting wells and water, and the amount of the latter.

Defendant claims that the plaintiff represented that he had three *good or common stock wells, which would afford water for a certain number of cattle;* that these representations were false and fraudulent, and that defendant was greatly damaged in consequence of the water not holding out.

In affirming the judgment below, we have a special regard to the nature of the alleged representations and the circumstances of the case as shown by the testimony.

The amount of water which a well will afford (as this depends upon the nature of the season and the quantity of rain that may fall) is largely, if not entirely, a matter of *opinion* rather than of fact.

It may be conceded that the instructions referred to were erroneous, so far as they laid down the proposition that if the defendant had an *opportunity* to have examined the wells, and did not, this alone would defeat any claim he may make for damages..

Where the representations relate to a matter of fact, it is not invariably true that there can be no fraud, if the other party had an opportunity or convenient opportunity to detect the falsehood. Thus, a man cannot, in my judgment, escape liability for false and fraudulent representations that he owns a parcel of land, because the other party had "convenient opportunity" to examine the record.

*2. —— false representations.*

Nor can he escape liability for positive and willful misrepresentations as to the quality of land, because the other party had an opportunity, by railroad or otherwise, to go a distance of five miles or five hundred, and examine, for himself, the character of the land.

While this is so, it is also true that the law requires of a party a certain degree of vigilance and caution. Therefore, in general, a party cannot make the mere opinion of another a ground of fraud, especially where this opinion relates to the value of an article, or to what will happen in the future, in relation to which each party has, or is supposed to have, equal opportunities to know or judge for himself.

*3. —— opinion.*

If it be granted that the instruction was, strictly speaking, erroneous in respect to the *opportunity* for examination, still the court are of opinion that, under the circumstances of the case, the judgment should not, for that reason, be reversed.

*4. INSTRUCTIONS.*

The court take this view of the case : The defendant's cross action was based, not *upon the contract, but upon fraudulent representations*, outside of the contract, as to the wells, amount of water, etc.

Now, the instructions which were refused, wholly overlooked the necessity of proving that the plaintiff knew his representations were false; in other words, it ignored the necessity of proving the *scienter*, or bad faith, or a state of facts which the law would deem equivalent to

a willful misstatement. The fact that Bondurant made untruthful representations, and that Crawford relied upon them to his damage, does not, necessarily, make out a case of *fraud*. Bondurant may have believed his representations, and have had good ground and probable cause for such belief, in which case he would not be guilty of a fraud. Such a state of facts might be ground for the rescission of the contract or for other relief, but it does not establish fraud. The court are of opinion that there was no proof of knowledge, on plaintiff's part, of the falsity of his representations, and that the instruction prayed for by the defendant was properly refused in the form it was asked.

The court are also of the opinion, that the controlling question in the case was fairly left to the jury, upon the evidence, to wit : Whether, in making the contract, the defendant relied upon his own judgment as to the extent and supply of water, or upon the representations of the plaintiff; and that the jury properly decided this question, as one of fact, against the defendant, and that a correct conclusion was reached, under the testimony.

The defendant required no stipulation to be inserted in the contract as to the number of wells or amount of water; and his loss in the transaction was doubtless considered by the jury as ascribable to the defendant's inconsiderateness in entering into such a contract, rather than any fraud of the plaintiff.

It is therefore considered that it is not necessary to decide the question, whether there may not be fraud in certain cases without knowledge of the falsity of the representations ; as, where a party having no knowledge, makes a positive and unqualified statement of a fact as of his own knowledge, upon which the other party acts, and from which the party making the statement derives an advantage.

Upon this subject see the following recent and important cases: *Bennett* v. *Judson*, 21 N. Y., 238, 1860; opinion of MAULE, J., in *Evans* v. *Edwards*, 76 Eng. C. L. (13 C. B.), 773, 1853; *Stone* v. *Denny*, 4 Metc. (Mass.), 151, able opinion by DEWEY, J.; *Thomas* v. *McCann*, 6 B. Mon., 601; *Monroe* v. *Pritchett*, 16 Ala., 785; *Lockridge* v. *Foster*, 4 Scam., 569; 1 Story Eq., § 193; Id., Agency, § 139; *Buford* v. *Caldwell*, 13 Mo., 477; compare and consult following late English decisions, *Collins* v. *Evans*, 48 Eng. C. L., 820, and cases cited; *Rawlings* v. *Bell*, 50 Id., 591; *Edmonds* v. *Evans*, *supra;* *Wilson* v. *Fuller*, 43 Eng. C. L., 634; Id., 1009. The question whether, to constitute fraud, there must in all cases be *willful* falsity of representations, we prefer to leave open until a case arises which requires us to decide it.

Affirmed.