MARTIN RILEY, Appellee, v. J. E. BELL, Appellant.

False Representations: SALE OF LAND: LIABILITY OF AGENT: IN-1 STRUCTION. Where an agent for the sale of land willfully misrepresents the title, and the purchaser, relying upon his statements, is induced to purchase without examination of the title and is defrauded thereby, the agent cannot avoid liability for the loss on the ground that he was acting in a representative capacity, and an instruction embodying this rule is correct.

Fraudulent Representations: LIABILITY OF AGENT: ESTOPPEL. Where 2 an agent for the sale of land induces the purchaser to buy by falsely representing that a material fact is true within his knowledge, and damages result, the agent cannot thereafter be heard to say that he in fact had no knowledge of the subject concerning which the representations were made by him.

False Representations: RELIANCE UPON. In a suit by a purchaser against an agent for falsely representing the title to land he is selling, the agent cannot be heard to say that the purchaser had no right to rely thereon.

Fraud of Agent: RECOVERY: REASONABLE CARE. Where one has been induced to purchase land by the willful misrepresentations of an agent as to the title, a showing that the purchaser acted as a reasonably prudent man is not a condition precedent to his recovery from the agent for the injury done.

Practice: REVIEW OF ERROR. An error in an instruction on the subject of damages which might have been corrected by the trial court if attention had been called to the same, cannot be reviewed when objection is first made on appeal, under Code, section 4105.

Same. Where complaint is made for the first time on appeal that the court failed to submit an issue raised by the pleadings, the error will not be reviewed.

Exclusion of Evidence. ERROR: CURED BY VERDICT. In an action for fraudulent representations, error in the exclusion of evidence in support of a counterclaim for damages for the wrongful issuance of an attachment based on nonresidence, where the ground for the attachment is admitted, is cured by a verdict for the plaintiff.

*Appeal from Adams District Court.*—HON. H. M. TOWNER, Judge.

MONDAY, MAY 25, 1903.

ON December 1, 1890, G. W. Frank, residing in the state of Nebraska, was the owner of one hundred and twenty acres of land in Adams county, this state, which land he had placed in the hands of the defendant, Bell, then a real estate agent residing at Corning, in said county, for sale. On the date named, Bell negotiated a sale of the land to plaintiff, and a contract in writing was executed and delivered, the material provisions thereof being that the purchase price should be paid in installments, the last one to become due and payable March 1, 1896; that, upon payment being made in full, conveyance should be made "in

fee simple, clear and free of all incumbrances whatever, by good and sufficient warranty deed." The contract was executed by Frank, in Nebraska, and forwarded to defendant, who delivered the same to plaintiff, and thereafter all payments to be applied on the purchase price were made to defendant by plaintiff. The last payment was thus made in August, 1895, and on November 7th following, a warranty deed, in general form, executed by Frank, was delivered by defendant to plaintiff. It appears that at all the times mentioned the lands in question were in fact incumbered by the lien of a valid recorded mortgage held by one Loomis. During the year 1897 proceedings were instituted to foreclose such mortgage, resulting in a judgment and decree of foreclosure, of date March 22, 1899. This plaintiff was made a party defendant to such action, and he appeared and unsuccessfully defended. On April 24, 1899, plaintiff paid said judgment, amounting to $2,280.90, and costs, including attorney's fees, $136.30. This action is brought to recover of the defendant the aggregate of said sums, and is based upon allegations to the effect that, at the time of the purchase of and payment for said land, plaintiff was ignorant concerning the title thereto; that defendant, in response to a request for information as to such title, represented to plaintiff that, of his own personal knowledge, the land was free and clear of all liens and incumbrances whatsoever. And plaintiff says that, relying wholly upon such statement, he purchased and paid for said land without having made a title examination. He further says that the representations so made by defendant were false, and known by him (said defendant) at the time to be so, and were made with intent to cheat, wrong, and defraud plaintiff, and with intent that plaintiff should rely thereon, which he did, to his damage, as stated; that, when he discovered the existence of said mortgage, the said Frank had become and was insolvent, and had no property in this state. The

defendant pleads the fact of his agency. He also denies the fraud, deceit, concealment, and misrepresentations alleged, and denies actual knowledge of the existence of the Loomis mortgage at the time when the contract was made. Such other matters appearing in the record as are material to be considered are stated in the opinion. There was a jury trial, verdict and judgment in favor of plaintiff, and defendant appeals.—*Affirmed.*

*Burg Brown, T. M. Stuart,* and *Maxwell & Maxwell* for appellant.

*Sullivan & Sullivan* and *F. C. Okey* for appellee.

BISHOP, C. J.—It appears from the record that the defendant was for many years a business man at Corning, the seat of Adams county, and well known to plaintiff; that the latter is an aged farmer, having little or no education, and who resides near Corning; that defendant, acting as the agent of Frank, negotiated the sale of the land in question to plaintiff, and at the time thereof such land was incumbered by the lien of the Loomis mortgage; andthat at the time of making the contract, and of his payments thereunder, plaintiff had no actual knowledge of the existence of such mortgage. We think it further appears —and the jury found such to be the fact—that, to induce plaintiff to enter into the contract, defendant asserted that he had personal knowledge of the condition of the title to the lands, and that such title was perfect in all respects. The representations made by defendant, as testified to by plaintiff and other witnesses in his behalf, were, in substance, as follows: Pending the negotiations for the sale, plaintiff said: "Mr. Bell, I will buy the land if it is clear of everything. 1 don't want to buy anything unless it is clear, and I want to buy of you." To which defendant responded: "All right. It is clear of everything. I have looked up the record, and it is clear of everything."

Again, at the time the contract was signed, defendant said that he had examined the records, and that the land was clear and free of all incumbrances. This he repeated several times. Being asked about an abstract of title, defendant answered that, if an abstract was furnished, plaintiff would have to pay for the same, whereupon plaintiff said: "All right. I will pay for the abstract, if that is all." To this defendant replied: "Look here. There is no use of your paying for an abstract, because the land is clear, and you are just throwing away that money." Plaintiff says, and the jury accepted his statement as true, that he believed and relied upon the statements so made by defendant, and accordingly did not cause an examination of the title records to be made. As a witness on his own behalf, the defendant denied having knowledge of the existence of the mortgage at the time the contract was made, and denied making the statements attributed to him.

The court, upon its own motion, gave to the jury an instruction as follows: "(5) It is not sufficient to show that the representation was made, and made to induce the sale, and that said statement was in fact untrue. *It must further appear that the defendant knew said statement was untrue when he made it, or he must have asserted that he had actual knowledge, or intended to convey the impression that he had actual knowledge, of the truth of the statement made, although conscious that he had no such knowledge.* It is admitted that defendant was the agent of Frank, and so acted in the transaction. It is also admitted that plaintiff knew that defendant was acting for Frank, and not for himself. Under these circumstances, a mere assertion or representation concerning the said land would be presumed to be made for and on behalf of the principal, and the agent would not be liable for any such assertion or representation, concerning said land *unless, such agent in making such statement, knew at the time he*

*was making it that the statement was false and untrue, or*
*that he made such representation assuming and asserting*
*that he had personal knowledge, when in fact he had not."*
(The italics are ours.)

To the giving of such instruction the defendant saved
an exception, and he now assigns error based thereon.
The particular grounds of complaint have reference to the

.I. FALSE repre-
sentation;
sale of land:
liability of
agent; in-
structions.

italicized portions of the instruction. It is
contended in the first place that the instruc-
tion is erroneous in that the representations
alleged, conceding the same to have been
made, were the representations of the principal, and,
under the circumstances presented, he alone became
bound thereby. In support of this proposition, counsel
invoke the general rule to the effect that where an agent
has acted in good faith, and within the limits of his auth-
ority, his principal alone is bound by his representations,
however false the same may prove to be in point of fact.
The force of such rule, as applied to a state of facts com-
ing within the field of its operation, is not to be denied.
But it will be observed that the element of good faith is
essential to the rule, and it follows, of necessity, that,
in a case dominated by bad faith or fraud on the
part of the agent himself, the rule can have no applica-
tion. The rule thus invoked by counsel is confined in its
application to such representations, and such only, as may
be made by an agent, speaking as such, for and on behalf
of his principal. Thus it is that an agent is not chargeable
with personal responsibility where it appears that he has
acted in good faith within the general scope of his author-
ity, and in making representations has acted simply as the
mouthpiece of his principal, and has spoken, therefore,
as his principal might have spoken, had he been personally
present and acting in the premises. The thought of the
instruction under consideration is that bad faith and
fraud—that is, a conscious and willful misrepresentation

of a fact—are essential to a recovery as against the agent in any event. In effect, therefore, the jury is told that, unless bad faith is made to appear, the plaintiff must fail in his action, and a verdict should accordingly be returned in favor of defendant. Now, that a personal liability may be charged as against an agent where fraud or bad faith on his part is alleged and proven, is well-settled doctrine. *Lyon v. Tevis*, 8 Iowa, 79; *Paton v. Lancaster*, 38 Iowa, 494.

This doctrine is bottomed upon the principle that any person who by himself perpetrates a fraud, or who makes himself a party with others to the commission of a fraud, may be held personally liable for the natural consequences or proximate results flowing therefrom. It follows that one who sustains the relation of agent cannot escape liability for his fraudulent acts, willfully committed while in pursuit of the master's business, by merely pointing out the fact of his agency. *Norris v. Kipp*, 74 Iowa, 444; *Delaney v. Rochereau*, 44 Am. Rep. 456; *Berghoff v. Mc- Donald*, 87 Ind. 549; *Hedden v. Griffin*, 136 Mass. 229 (49 Am. Rep. 25); *Campbell v. Hillman*, 61 Am. Dec. 195; Mechem on Agency, section 571. Here bad faith and fraud are charged against the agent personally, and there is evidence in the record tending to support such allegation. The criticism of the instruction thus made is therefore without merit.

A further attack is made upon the instruction for that no reference is made therein to the necessity of proof of *scienter*. It may be conceded that, in an ordinary

2. FRAUDULENT action for deceit by means of false and fraud-
representa-
tions: lia-   ulent representations, proof of *scienter* is
bility of agent
estoppel.    essential. This is the general rule, and has been adhered to by this court in a line of cases beginning with *Holmes v. Clark*, 10 Iowa, 423, and ending with *Boddy v. Henry*, 113 Iowa, 462. But we think such rule cannot be accepted as controlling in a case such as we now have before us. Where the wrong complained of is that

the defendant has induced the plaintiff to act by falsely and fraudulently representing that a certain material fact is true, within his personal knowledge, and injury and· damage result therefrom, both reason and authority unite in dictating the wholesome doctrine that he shall·not be heard thereafter to assert that in fact he had no knowledge upon the subject concerning which the representation was made by him. Such was directly our holding in *McKown v. Furgason*, 47 Iowa, 636. The principle finds support, also, in the following authorities: *Bondurant v. Crawford*, 22 Iowa, 40; *Gardner v. Trenary*, 65 Iowa, 646; *Claflin v. Assur. Co.*, 110 U. S. 81 (3 Sup. Ct. Rep. 507, 28 L. Ed. 76); 14 Am. & Eng. Ency. (2d Ed.) 120; Cooley on Torts, 498. The rule announced in *Boddy v. Henry, supra*, is not antagonistic to the doctrine of the *McKown Case*. In writing his opinion, McClain, J., had the *McKown Case* before him, and finds in what is there said a qualification of the general rule, rather than the announcement of a doctrine in opposition thereto. In the *Boddy Case* it is said that "intentional fraud, as distinguished from a mere breach of duty or the omission to use due care, is an essential factor in an action for deceit." And this may be accepted as correct doctrine. It is the purpose to commit a fraud that gives rise to the rule authorizing damage to be recovered for a deceit, and hence the necessity for proof of the *scienter*; that is, knowledge of the falsity of the statement on the part of the person making the same. Were it not that, to be actionable, the fraud must be born of intention, then it would be that prosecutions for deceit could be predicated upon any misrepresentation designed to influence the conduct of another, however the mistake may have arisen, or however honestly the representation may have been made. But where the statement complained of is accompanied by a direct, but false, assurance that the truth thereof is personally known to the person

making the same, the reason for the general rule, in so far as it requires proof of actual knowledge, can have no application. In such case the person making the representation at least knows that his statement of personal knowledge is false, and therefrom an intentional frau l is easily to be presumed. There can be no variance in the principle upon which one is held liable for damage who asserts the existence of a fact, knowing that in truth it does not exist, and that upon which a like responsibility is visited upon one who, conscious that he is ignorant concerning the subject-matter of which he speaks, still falsely asserts that, within his own personal knowledge, a fact stated by him does in truth exist. In each instance an intentional fraud is manifest, and it is of this that the law takes note, and for this it affords a remedy.

But appellant says that, conceding even the making of the representation alleged, the instruction was erroneous, in that no recovery should be allowed, inasmuch as 3. FALSE repre- plaintiff had no legal right to rely upon such sentations: reliance upon. representation, and so make no further effort to ascertain the real condition of the title to the lands. In this we do not agree. If defendant in fact knew the condition of the title, it was his duty to truthfully represent the same, if he essayed to speak at all upon the subject. If he did not know the condition of the title, it was his duty to frankly avow that fact, if he essayed to speak at all. Here the charge is that he claimed to have personal knowledge to the effect that the title was perfect. Now, if plaintiff acted upon such representation in good faith, and to his damage, both reason and authority unite in authorizing a recovery for the damage thus sustained. Under the circumstances here presented, we think it does not lie in the mouth of one charged with such a fraud to say that an examination of the county records would have disclosed his untruth and laid bare his attempted fraud. Where one is shown to have made statements of the char-

acter here in question, the law presumes that he intends that the same shall be relied upon. If the party to whom they are made does in good faith rely thereon, he may recover, notwithstanding it may appear that opportunities were open to him to ascertain the truth by investigation and examination. As applied to a case such as we have before us, it is well settled that one who, to advance his own interests, falsely asserts the existence of a state of facts, knowing the other party to be ignorant, cannot complain if he is believed.

II. Complaint is made of the sixth instruction as given by the court. Therein the jury is told that, in any event, it must be made to satisfactorily appear that the plaintiff believed and relied upon the representations alleged to have been made. The instruction then calls attention to the' fact that the mortgage in question was a matter of record in said county, and concludes as follows: "Under ordinary circumstances, the record imparts and presumes notice, and a person is supposed to know what he might with reasonable diligence have discovered. Under ordinary circumstances, it is likewise the duty of the person who is about to purchase land to examine the records, and if he neglects to use the means which are thus placed at his disposal for his protection, and a loss occurs, he is not allowed to set up his own negligence and want of diligence to reimburse him for such loss. But *in cases such as the plaintiff asserts in the case at bar, where such examination is not made by reason of affimative allegations regarding the condition of the title, such ordinary rules do not apply, providivg it appears that such statements are believed and relied upon, and the other elements necessary to warrant recovery are established.*" That it is the duty of every person to use ordinary care and prudence in the transaction of his business affairs is undoubtedly true, and, generally speaking, if he neglects to make use of

4. FRAUD of agent: recovery: reasonable care.

such means as are at his disposal, and a loss occurs, he is to be held remediless. To say otherwise would be to hold out an inducement or reward for negligence and want of diligence. *Gee v. Moss*, 68 Iowa, 318; *Longshore v. Jack*, 30 Iowa, 298; *Ladner v. Balsley*, 103 Iowa, 674.

It is the contention of counsel for appellant that it was incumbent upon plaintiff to prove not only that the representations were made as alleged, and that they were believed and relied upon, but that he must go farther, and show to the satisfaction of the jury that under all the circumstances, and as a matter of fact, he acted as a reasonably prudent and careful man in thus believing and relying. And it is said that the instruction is erroneous in that negligence or want of care and diligence on the part of plaintiff, as a question of fact, material and proper to be submitted to the jury, was thereby ignored, and, in effect, determined upon by the court as a proposition of law. The instruction, as a whole, tells the jury that it is incumbent upon plaintiff to prove the making of the false representations alleged, and that they were made with intent that they should be believed and relied upon; that he (plaintiff) did in fact believe and rely upon the same, and acted in accordance therewith. As applied to this case, the contention of appellant accordingly narrows down to this: Where one is charged with making false representations, intending that such should be believed and relied upon, and which were believed and relied upon, may he demand proof, as a condition precedent to fixing upon him a liability for resulting damages, to the effect that the person whom he has thus deceived and damaged acted as a reasonably prudent man in taking him at his word, and acting upon faith of his truthfulness? The mere statement of the question, as it seems to us, is sufficient to clearly indicate the appropriate answer. It would be absurd—nay more, a travesty—to say that one who, to accomplish his own ends, by willful fraud has induced

another to act to his damage, may demand that the question of his liability shall be made to depend upon whether or not his victim would have gotten tangled in the net purposely spread for him, had he acted as an ordinarily prudent man.    One who induces another to walk in the way of a pitfall, ought not to be absolved from liability for a resulting injury, even though he might, if permitted to do so, convince a jury that his scheme would not have been successful, had his victim displayed ordinary business judgment.

III.  The jury was instructed that, if the plaintiff was found entitled to recover, the verdict in his favor should be for the sum of $2,424.80.    This sum, it will be noticed,

5. PRACTICE; review of error.  corresponds with the sum paid by plaintiff to satisfy the judgment in the foreclosure suit, including costs and attorney's fee.    The giving of such instruction is assigned as error.    The specific complaint made is that the costs of the foreclosure suit, including attorney's fee, were improperly included in the sum named in the instruction.    Appellee now calls attention to the fact that, as shown by the record, the point here contended for is presented for the first time in this court.    It is a rule of the statute—and we have repeatedly held in conformity therewith—that a judgment may not be reversed for an error which could have been corrected on motion in the trial court, until such motion has been there made and overruled.    Code, section 4105; *Garvin v. Cannon*, 53 Iowa, 716; *Richman v. Board, etc*, 70 Iowa, 627; *Ketchum v. Larkin*, 88 Iowa, 215.    Should we concede that plaintiff, as a matter of right, ought not to be permitted to recover in this action the amount of the costs in the foreclosure suit paid by him, and that the instruction was erroneous to that extent, still it is clear that relief cannot be had in this court, as the error, if such there was, might have been corrected, on motion, in the trial court. The incorrect amount, if such it be, may have been in-

serted by accident or oversight, or under a mistaken ap-
prehension of the law or the facts.    In any event, it was
the duty of defendant to call attention thereto by way of
motion for new trial, or otherwise, and thus afford oppor-
tunity for correction.    The mere taking of an exception is
not sufficient, where the specific point contended for is not
called to the attention of the court, and a ruling had
directly thereon.

In this connection we may dispose of another assign-
ment of error, and much that has been said above has
application thereto.    As one of his defenses, the defend-
ant pleads the bar of the statute of limita-
tions; it being alleged that plaintiff's cause

6. SAME.

of action accrued more than five years prior to the time
the action was commenced.    No request was made for an
instruction to the jury having relation to such ground of
defense, and no reference was made thereto in the state-
ment of the issues, or in the instructions given the jury by
the court on its own motion.    The failure of the court to
submit the issue so tendered, under proper instructions, is
assigned as error.    As an abstract proposition of law, it
may be conceded that it was the duty of the court, without
request, to submit to the jury, under proper instructions,
each of the several defenses tendered concerning which
any dispute of fact was presented by the record.    The
failure to request is material only in the sense presently
to be noticed.    The record before us further discloses that
no objection was made, or exception taken, based upon
the error or omission now complained of; nor was the sub-
ject-matter presented to the trial court after verdict by
motion for new trial or otherwise.    The omission is com-
plained of for the first time by way of assignment of error
in this court.    In view of the statutory provision and our
previous holdings, to which we have already called atten-
tion, it is manifest that we cannot consider the same.
Had a request for instruction been presented and refused;

had the motion for new trial made reference to the omis-
sion; had objection been made in any form, and the same
ruled upon—the record might have presented a question
for our determination. As the record presented contains
no reference to an adverse ruling, nor to an ·exception
saved, and as both are essential as a basis for an assign-
ment of error, we cannot consider the question thus made.

IV. In the petition it is alleged that defendant is a
nonresident of the state of Iowa, and a writ of attachment
is prayed for. With his answer the defendant presented

*7. EXCLUSION of evidence: error cured by verdict.* a counterclaim, in which it is alleged that at
the time of the commencement of plaintiff's
action a bond for attachment was filed, a
copy of which is set forth, and that, based thereon, a writ
of attachment was issued, and·levied upon his property.
Defendant admits the fact of nonresidence alleged, but he
says that the attachment was wrongful, in that he was not
in any manner indebted to plaintiff at the time. The
character and ex'ent of the damages sustained by him are
set forth, and judgment on the bond demanded. By way
of reply to such counterclaim, the plaintiff pleaded a gen-
eral denial. As a witness on his own behalf, the defend-
ant was asked the following questions: "Q. What do you
know about losing ·any sales, or any damages that have
arisen to you, by reason of this attachment?" "Q. State
whether or not it was necessary for you to come here to
defend against this action?" "Q. How far did you have
to come to attend this trial?" "Q. What were your ex-
penses in coming here to defend against these attachment
proceedings?" Each of the foregoing questions was ob-
jected to as incompetent, irrelevant, and immaterial, and
the objections were sustained. Such was the only evidence
offered by defendant in support of the averments of his
counterclaim. The objections thereto may properly have
been sustained for the following, if for no other reason:
The reply put in issue every fact alleged in the counter-

claim, and defendant thereby became bound to make proof of all material facts alleged. In view of the entire absence of preliminary proof concerning the issuance and levy of the attachment, it is manifest that evidence 'as to the character or extent of damage might well be regarded as improperly offered. But if this were not so, and conceding, for the purposes of this case, that the matters of damage sought to be proven were proper in character, still, in view of the verdict found by the jury, the defendant is in no position to complain. The attachment was grounded simply upon an allegation of nonresidence, and this was confessed. At best, therefore, defendant could recover damages only in the event that plaintiff should fail of a recovery upon the cause of action alleged by him. It follows that the error, if any there was, was cured by the verdict returned by the jury.

V. Complaint is made of misconduct on the part of the jury. We have read the record carefully, and, in our opinion, no sufficient showing of misconduct, resulting in prejudice, appears. We have also examined the several assignments of error based on rulings connected with the introduction of the evidence in the case, and find no prejudicial error.

We think the judgment was warranted by the evidence, and finding no error it is AFFIRMED.