**CEDAR FALLS BUILDING CENTER, INC., an Iowa Corporation; Gene Bond Plumbing & Heating Co., an Iowa Corporation, Plaintiffs,**

v.

**Dana B. & Nola G. VIETOR, Defendants-Appellees,**

v.

**YOUNG PLUMBING & HEATING CO.; Wickes Lumber Division of the Wicks Corporation and Dennis Damm, d/b/a Hawkeye Builders, Interpleader Plaintiffs,**

v.

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION, Interpleader Defendant-Appellant.**

No. 83–1173.

Court of Appeals of Iowa.

Jan. 29, 1985.

Michael M. Pedersen of Martin, Nutting, Miller, Keith & Pedersen, Waterloo, for interpleader defendant-appellant.

Douglas V. Coonrad, Hudson, for defendants-appellees.

Heard by OXBERGER, C.J., and SNELL, and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

The appellant bank has appealed from a verdict in favor of the defendant-appellees in their cross-claim against the bank for negligent misrepresentation. We affirm in part and reverse in part.

Hawkeye Builders, a homebuilding concern owned and operated by Dennis Damm, contracted to build a house for purchasers Dana and Nola Vietor. The Vietors obtained financing for the project from First Federal Savings and Loan Association of Waterloo.

During construction it developed that Hawkeye Builders had not paid some of its subcontractors and suppliers. The Vietors learned of these problems and contacted their loan officer at First Federal. The loan officer allegedly assured the Vietors that all supplies and subcontractors had filed "lien waivers" with the bank, waiving their rights to place liens on the real estate and thus protecting the Vietors from liability for bills left unpaid by Hawkeye. The Vietors then proceeded to disburse to Hawkeye the remaining amounts of the $68,000 contract price and the Vietors allege that in so doing they relied on the loan officer's assurances that "lien waivers" had been filed.

After the Vietors had paid Hawkeye, several suppliers and subcontractors of Hawkeye filed mechanic's liens against the property. Contrary to the Vietors' belief, these suppliers and subcontractors had not filed "lien waivers" at the offices of First Federal.

In the complicated litigation resulting from the mechanic's liens, the Vietors filed a cross-claim against First Federal alleging the tort of negligent misrepresentation. The Vietors alleged that First Federal had negligently misrepresented that all of Hawkeye's suppliers and subcontractors had filed lien waivers.

This cross-claim was tried to a jury, which awarded the Vietors damages of over $34,000. First Federal has appealed from judgment upon the verdict. None of the other parties or other claims in the underlying mechanics' lien litigation are involved in this appeal.

First Federal says there are several errors on appeal. The bank initially contends there was insufficient proof of justifiable reliance. Prior to any representations by the bank, it claims the Vietors knew that the mechanic's liens might be filed and that Damm was not paying some of the subcontractors. Second, the bank says the court erred in not allowing it to amend its petition at the close of evidence to conform to proof of contributory negligence by the Vietors. An instruction to the jury regarding contributory negligence was also im-

properly refused, the bank says. Third, the issue of punitive damages should not have been submitted to the jury, First Federal says, alleging there was no evidence of wanton, reckless, or grossly negligent conduct on the part of the bank.

■■■ The scope of our review of these alleged errors is limited to correcting errors of law. Iowa R.App.P. 4. The findings of fact of the jury are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We must view the evidence in the light most favorable to the one in whose favor the verdict was rendered. *Poulsen v. Russell*, 300 N.W.2d 289, 294 (Iowa 1981). It is for the jury to act as trier of facts, and the court cannot substitute its view of the evidence for that of the jury. *Neighbors v. Iowa Electric Light and Power Co.*, 175 N.W.2d 97, 101 (Iowa 1970); *Sieren v. Stoutner*, 162 N.W.2d 396, 397 (Iowa 1968).

## I.

Vietor says that in 1981 while the house was being built, he became concerned about signing any more vouchers to pay Damm until he was certain Damm was paying the subcontractors. He expressed this concern to the assistant vice president of the bank, Geoffrey Kennedy, and said Kennedy replied, "That's what we have lien waivers for." The bank argues this statement was not made, but says it should not have been taken by Vietor to mean the bank had obtained lien waivers for him.

The bank claims there is ample evidence that the Vietors could not have justifiably relied upon its statements regarding lien waivers because the Vietors were aware that the liens might be filed. It says this evidence includes the fact that Dana Vietor was told by a subcontractor he would not work for Damm because Damm had trouble paying his subcontractors. Several subcontractors had contacted Vietor telling him they were not being paid. Prior to a conversation with the bank, Vietor was told by several subcontractors they were not being paid and before an August meeting, was told that one-half of one subcontractor's bill was paid.

Vietor says the entire June conversation about payment of the subcontractors included the statement from Kennedy, "I'll take care of it. Don't worry about it." Vietor asked why he should not worry about it, and Kennedy reportedly responded, "That's what we have lien waivers for." The statement was repeated in a phone call later and in another conversation in August. A subcontractor who was present during one of these conversations confirms the substance of the statements, and said it was his impression Kennedy was reassuring Vietor that the bank had obtained lien waivers for him. The bank had also been presented with a copy of the contract between Vietor and Damm which stated that last payment would not be made until there were assurances the subcontractors had been paid. The Vietors further had been relying on the bank to make the payouts after Vietor signed the vouchers.

Kennedy said he did not know that Damm had any trouble in the past paying his bills, and knew Damm only as a reliable contractor after one and one-half years of business, building four houses in that time. He said if he had known Damm was having financial problems, he would have obtained lien waivers from Damm as the project progressed. Instead, he viewed this as a problem between Vietor and Damm. Kennedy indicated he viewed his primary responsibility to the bank, and to see that its mortgage received priority over any liens that might be filed. However, Craig Holdiman, the property manager for First Federal, testified that at the time the Vietors received their loan from the bank, it was the policy of the bank to receive waivers as the loan proceeds were disbursed. He could not explain why such waivers were not obtained in this instance.

■■■ We believe the plaintiffs generated a jury question on the issue of justifiable reliance, and the jury's finding that the Vietors were justified in their reliance is supported by substantial evidence. The jury could find the bank's statements were

made in circumstances to justify the Vietors' belief the problem would be taken care of, even though he was aware that certain subcontractors were not being paid. The representations to him were made several times. When an individual acts on the representations of another and relies on them in good faith, he has no duty to further investigate, or in this case, to ask to see the waivers. *See Riley v. Bell,* 120 Iowa 618, 626, 95 N.W. 170, 172 (1903).

## II.

A grant to amend a petition should be freely given when justice so requires. Iowa R.Civ.P. 88. It is within the court's sound discretion whether an amendment to conform to proof should be allowed, and the court's decision will be reversed only if there is clear abuse of that discretion. *Freeman v. Bonnes Trucking, Inc.,* 337 N.W.2d 871, 878 (Iowa 1983); *Helms v. Helten,* 290 N.W.2d 876, 883 (Iowa 1980); *B & B Asphalt Co., Inc. v. T.S. McShane Co., Inc.,* 242 N.W.2d 279, 284 (Iowa 1976).

Contributory negligence is a defense to a negligence action, but not where strict liability is alleged. *Franken v. City of Sioux Center,* 272 N.W.2d 422, 425 (Iowa 1978). The bank claims evidence was presented by both parties during the trial on contributory negligence. When both parties voluntarily provide evidence on an issue without objection, it is beyond the discretion of the court to deny amendment to conform to such proof. *Mooney v. Nagel,* 251 Iowa 1052, 1059, 103 N.W.2d 76, 80 (Iowa 1960).

Contributory negligence, rather than comparative negligence, was the rule which would have applied in this case, as conceded by the plaintiffs during trial. Contributory negligence is an affirmative defense, to be pleaded and proven by the defendant seeking to rely on it. Iowa Code § 619.17 (1983); *Bauman v. City of Waverly,* 164 N.W.2d 840, 845 (Iowa 1969). The defense is also a complete bar to plaintiff's recovery. *Id.* The bank here did not plead contributory negligence as an affirmative defense. Instead, it sought to add the defense at the close of evidence. Such a change in defense would surprise the plaintiff, and possibly change its manner of handling the case. Amendments are allowed only where they do not substantially change a claim or defense. *W & W Livestock Enterprises, Inc. v. Denver,* 179 N.W.2d 484, 488 (Iowa 1970). We agree with the trial court the amendment should not have been allowed, and, consequently, the jury should not have been instructed on contributory negligence.

## III.

It is reversible error to submit a fact question to the jury when there is no evidence to support it. *Dutcher v. Lewis,* 260 N.W.2d 404, 406 (Iowa 1977). The bank claims that is the case here, and that the record does not support by substantial evidence any claim to punitive damages.

First Federal says there is no way Kennedy could have known that Vietor would take the words he stated as meaning the bank would obtain lien waivers for him, and further could not have known that harm would result to the Vietors since Damm might have paid the subcontractors. The bank claims Kennedy must have known the probable consequences of his actions in order for malice to be found, citing *Amos v. Prom,* 115 F.Supp. 127 (N.D.Iowa 1953).

There is little in the record to support a finding of ill-will, malice, or hatred for the Vietors.

Plaintiffs say the jury could have found the defendant guilty of "legal malice." This is recognized in Iowa:

[W]hen the law reaches this last stage, as it has in Iowa, it is no longer 'malice' which is required but the 'something else' from which malice is said to be presumed. *See Schnathorst v. Williams,* 1949, 240 Iowa 561, 36 N.W.2d 739, 10 A.L.R.2d 1100; *Wilson v. Lapham,* 1923, 196 Iowa 745, 195 N.W. 235; *Jenkins v. Gilligan,* 1906, 131 Iowa 176, 108 N.W. 237, 9 L.R.A., N.S., 1087. 'It is enough (for legal malice) if it be the

result of any improper or sinister motive and in disregard of the rights of others.' 108 N.W. at page 238. The rule would seem to be: exemplary damages may be awarded where defendant acts maliciously, but malice may be inferred where defendant's act is illegal or improper; where the nature of the illegal act is such as to negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of defendant, liability for exemplary damages is not based upon the maliciousness of the defendant but is based, rather, upon the separate substantive principle that illegal or improper acts ought to be deterred by the exaction from the defendant of sums over and above the actual damage he has caused. *See Mendenhall v. Struck,* 1929, 207 Iowa 1094, 224 N.W. 95, 97, 'Malice does not necessarily mean spite or hatred, but it means the doing of an actual wrong in itself without just cause or excuse.'

*Claude v. Weaver Construction Co.,* 261 Iowa 1225, 158 N.W.2d 139, 144 (Iowa 1968). (quoting *Amos v. Prom,* 115 F.Supp. at 137).

 Even with the definition of legal malice, we cannot find evidence to warrant submitting the issue of punitive damages to the jury. In further describing legal malice, it has been indicated both in *Amos* and in Iowa cases, the improper act warranting a finding of legal malice must be of a nature "such as to negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of the defendant ..." *Id.; Amos* at 137. No punitive damages are allowed with a "mere mistake," *Inman v. Ball,* 65 Iowa 543, 546, 22 N.W. 666, 668 (1885). More than mere negligence must be shown. 22 Am.Jur.2d *Damages* § 251 (1965).

The evidence shows that Kennedy did not know that Damm was having financial difficulties, and his past experience with Damm showed he was reliable. The evidence shows only Kennedy used poor judg-

ment and was negligent, but cannot support an award of punitive damages. Accordingly, we must reverse the verdict in favor of punitive damages in the amount of $19,000. Because of this decision, we do not reach the issue of whether attorney fees should have been included in the punitive damages award.

AFFIRMED IN PART, REVERSED IN PART.