**R.L. DILLON, Plaintiff–Appellant,**

v.

**GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant–Appellee.**

**No. 91–2449.**

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1992.

Decided Sept. 16, 1992.

Before BOWMAN, Circuit Judge,
FLOYD R. GIBSON, Senior Circuit Judge,
and LOKEN, Circuit Judge.

PER CURIAM.

Ron Dillon appeals the district court's [1] grant of judgment notwithstanding a jury verdict of $50,000 compensatory and $450,000 punitive damages against General Casualty Company of Wisconsin for negligent misrepresentation in settling a prior lawsuit. The district court held that, under Iowa law, emotional distress damages are not recoverable for this claim and Dillon failed to prove the malice necessary to support the award of punitive damages. Having reviewed this decision de novo under the rigorous standard for the grant of j.n.o.v., *see Gulbranson v. Duluth, M. & I.R. Ry.*, 921 F.2d 139, 141 (8th Cir.1990), we affirm.

Dillon owned PCP Manufacturing, a business that built defective hog confinement products. General Casualty was one of PCP's product liability insurers. When substantial damage claims were asserted by customers of PCP, a coverage dispute arose and General Casualty eventually commenced a declaratory judgment action against PCP. That action was settled in March 1987; the settlement spawned this action.

Pursuant to a lengthy Release and Settlement Agreement, General Casualty and another insurer not a party to this action paid PCP $537,500. In exchange, PCP and Dillon released all their existing claims under the insurance policies. The insurers also agreed to continue to defend third-party suits and to provide coverage for carefully defined types of damage claims.

Part of the prior dispute concerned expenses incurred by Dillon and PCP in cooperating with the insurers in defending customer lawsuits. PCP had billed the insurers not only for Dillon's expenses in assisting defense attorneys, but also for his time in monitoring the various lawsuits on be-

David L. Reinschmidt, Sioux City, Iowa (Stanley E. Munger, on brief), for plaintiff-appellant.

Jack W. Rogers, West Des Moines, Iowa, for defendant-appellee.

1. The HONORABLE JOHN A. JARVEY, Chief United States Magistrate Judge for the Northern District of Iowa, who presided over the trial of this case by consent of the parties. *See* 28 U.S.C. § 636(c).

half of PCP. Paragraph 17 of the settlement agreement provided in detail how the insurers would reimburse PCP and Dillon for future cooperation expenses. Paragraph 17 provided that Dillon would be paid an increased per diem and hourly rate but only when his assistance was requested by the defending attorney and pre-approved by General Casualty.

In January 1987, PCP had submitted expense reimbursement requests to the insurers that were still unpaid when the settlement agreement was signed on March 2, 1987. At a March 4 court hearing held at the insurers' request, Dillon testified that he understood the agreement to mean that those expenses would be paid on top of the $537,500. The questioning attorneys for the insurers did not take issue with this testimony, and no one else testified. Both counsel for Dillon and the presiding judge stated that the purpose of the hearing was not to interpret the agreement but only to verify that Dillon understood and voluntarily signed it.

In April 1987, Dillon wrote the first of a series of letters to a General Casualty claims attorney demanding that the January expense statements be paid and submitting new reimbursement requests that did not comply with Paragraph 17 of the settlement agreement. When Dillon heard no response from General Casualty for three months,[2] he commenced this action. Contending that his unchallenged March 4 testimony was the proper interpretation of the settlement agreement, Dillon sought compensatory and punitive damages on the ground that General Casualty's failure to pay his expenses or even respond to his payment demands demonstrated a fraudulent intent not to perform its obligations under the settlement agreement.

Most of the five day trial concerned the nature of the alleged misrepresentations. As to damages, Dillon introduced his expense reimbursement requests, but admitted that portions had been paid and portions were inconsistent with Paragraph 17. Dillon testified briefly to being upset over

General Casualty's failure to respond to his demands, and his deceased wife testified by video deposition as to how upset and angry Dillon was at being ignored by General Casualty. At the end of the trial, after expressing considerable doubt that emotional distress damages were available, the district court elected to submit this damage element to the jury before making a final ruling, a practice we have encouraged. See Hladyshewski v. Robinson, 557 F.2d 1251, 1255 n. 3 (8th Cir.1977).

The jury found General Casualty guilty of negligent misrepresentation but not fraudulent misrepresentation. It awarded no compensatory damages for unreimbursed expenses but $50,000 compensatory damages for "Mental Pain and Suffering." The jury also found that General Casualty's conduct "constituted willful and wanton disregard for the rights of another" and assessed $450,000 in punitive damages.

The district court then took up General Casualty's deferred motion for directed verdict and, after receiving post-trial briefs, granted j.n.o.v. in favor of General Casualty. The court first struck the compensatory damages for emotional distress. It concluded that such damages are not ordinarily recoverable for fraud in a business transaction, citing Cornell v. Wunschel, 408 N.W.2d 369, 382 (Iowa 1987), and that the jury's finding of negligent misrepresentation rather than fraudulent misrepresentation reflected no willful misconduct on the part of General Casualty, a necessary element of a claim for emotional distress in the absence of physical injury, citing Niblo v. Parr Mfg., Inc., 445 N.W.2d 351, 354–55 (Iowa 1989).

Turning to the award of punitive damages, the district court noted that punitive damages are not appropriate in fraud cases absent aggravating circumstances such as malice or outrageous conduct, citing Holcomb v. Hoffschneider, 297 N.W.2d 210, 213–14 (Iowa 1980). After reviewing Iowa cases where such aggravating circumstances have been found, the court concluded that General Casualty's several month

---

**2.** The claims attorney later testified that he put the seemingly improper demands aside for more careful study and then got distracted by the press of other business.

delay in responding to Dillon's demands and the company's rudeness in failing to acknowledge his correspondence did not "rise to the level of actual or legal malice necessary to support an award of punitive damages." Therefore, the court set aside the jury's damage award in its entirety without reaching the question whether the evidence was sufficient to support its finding of negligent misrepresentation.

On appeal, Dillon argues that the district court erred in striking both the emotional distress and the punitive damages. After carefully reviewing the record and considering these issues of Iowa law de novo, *see Salve Regina College v. Russell,* — U.S. —, —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), we conclude that the district court correctly applied Iowa law to this case for the reasons stated in its May 28, 1991 Order. *See* 8th Cir.R. 47B; *see also Mills v. Guthrie County Rural Elec. Coop. Ass'n,* 454 N.W.2d 846, 852 (Iowa 1990); *Cedar Falls Bldg. Center, Inc. v. Vietor,* 365 N.W.2d 635, 639–40 (Iowa Ct. App.1985).

Dillon also argues that the district court erred in instructing the jury that it may find negligent or fraudulent misrepresentation, but not both, and in refusing Dillon's requested instruction that General Casualty's silence in the face of his March 4, 1987, testimony as to the meaning of the settlement agreement may constitute a misrepresentation. However, these issues were not properly preserved because Dillon failed to object to the instructions as given before the jury retired. *See* Fed.R.Civ.P. 51; *Barton v. Columbia Mut. Cas. Ins. Co.,* 930 F.2d 1337, 1341 (8th Cir.1991). And in any event, we find no reversible error in the instructions as given.

Accordingly, the judgment of the district court is affirmed.