# IN THE COURT OF APPEALS OF IOWA

No. 18-1100
Filed November 27, 2019

**NEIL CONNER, LINDA STOUGARD, and DALE CONNER,**
    Plaintiffs-Appellants,

**vs.**

**EVA DECKER,**
    Defendant-Appellee.

Appeal from the Iowa District Court for Lucas County, John D. Lloyd, Judge.

Three siblings appeal the district court's order granting judgment notwithstanding the verdict, vacating an award of punitive damages, and granting a conditional new trial following the jury verdicts on their claims of tortious interference with inheritance, unjust enrichment, and mistake. **AFFIRMED.**

Tyler M. Smith of Smith Law Firm PLC, Altoona, and Alexander E. Wonio, Des Moines, for appellants.

Alan M. Wilson of Miles Law Firm, Corydon, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

Siblings LinDa Stougard, Dale Conner, and Neil Conner allege Eva Decker tortiously interfered with the inheritance they expected from their mother, Harriette Conner.[1] The siblings also claim Eva, the widow of their half-brother, was unjustly enriched by taking joint ownership of Harriette's personal bank accounts and certificates of deposit. Finally, they believe Harriette was mistaken as to the effect of that joint ownership. A jury ruled in their favor, awarding $188,192 in compensatory damages and $15,066 in punitive damages. But in response to Eva's post-verdict motions, the district court found inadequate evidence to support the tortious-interference theory, vacated the punitive damage award, and granted a new trial on the issue of actual damages unless the siblings file a remittitur reducing their judgment to $142,600. The siblings appeal that order.

Because the jury's finding of fraud or undue influence was not supported by substantial evidence, the district court properly foreclosed recovery on that theory. The district court also correctly decided punitive damages were unavailable and a new trial was warranted in the absence of remittitur.

I.    **Facts and Prior Proceedings**

Harriette Conner died in 2015 at the age of 91. This case involves the inheritance she left to her children. She married Fred Conner in 1948 and together they had three children, LinDa, Dale, and Neil.

---

[1] Because many parties share surnames, we will use their first names for clarity.

Harriette and Fred also raised Ivan Decker, Harriette's first child from a prior marriage. Ivan was married to Eva and they lived in Chariton, Iowa. In 2001, Harriette and Fred retired and moved to Chariton. The following year, Fred died. Ivan and Harriette then started holding joint bank accounts. Ivan died in 2004.

Shortly after Ivan's passing, Harriette asked LinDa, Dale, and Neil, their thoughts on including Eva, Ivan's widow, as an equal beneficiary in her will. The siblings had no problem with that proposal. Harriette then visited a local attorney and had a will prepared to reflect that decision. Harriette named Eva as executor and attorney-in-fact. Harriette stated in her will that she devised all of the rest, residue, and remainder of her property, both real and personal, in equal shares (one quarter each) to LinDa, Dale, Neil, and Eva. She also directed all taxes imposed due to her death be paid out of her residuary estate.

Harriette then arranged with her bank to add Eva as a joint holder for her bank accounts and certificates of deposit. Eva became a joint account holder with the right of survivorship in Harriette's accounts. Eva testified Harriette added her as a joint account holder for convenience—"after [my husband] died she just asked me if I would be on the account with her, I mean have my name on there so if something would happen to her, she got sick, couldn't write a check or something that I could do it for her." Following Harriette's death, Eva retained possession of the joint accounts, including the certificates of deposits. The total amount of the joint accounts was $173,266.96.

Because the siblings did not receive any portion of the joint accounts, they sued Eva. Their allegations included (1) tortious interference with inheritance, (2) unjust enrichment, and (3) mistake. The siblings claim the funds in the joint bank accounts and certificates of deposit should be distributed according to Harriette's will. The suit went to trial, and the jury found for the siblings on all three causes of action. The jury awarded compensatory damages in the amount of $85,655 for Harriette's certificates of deposit and $102,537 for her checking and savings accounts. The jury also awarded $15,066 as punitive damages against Eva.

Eva moved for a new trial and for judgment notwithstanding the verdict (JNOV). Among other points, she argued the jury returned inconsistent answers to two questions submitted on the tortious-interference claim. The district court discussed the jury's finding that Eva acted in good faith throughout her financial transactions with Harriette and concluded: "[N]o damage award may be based on this theory of recovery." The court also vacated the punitive damage award of $15,066 and granted her motion for a new trial as to the actual damages unless the siblings file a remittitur reducing their judgment to $142,600. The siblings then moved to enlarge the ruling to clarify whether the court "vacated the jury verdict in plaintiffs' favor finding tortious interference by defendant." In response, the district court reasoned the jury's finding that Eva acted in good faith was a finding against the siblings on the tortious-interference claim.

The siblings now appeal.

## II. Scope and Standards of Review

Our review of a district court's ruling on a motion for a new trial depends on the basis of the motion. *Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 445 (Iowa 2016). Tortious interference with inheritance is an action at law. *See Frohwein v. Haesemeyer*, 264 N.W.2d 792, 795 (Iowa 1978). A motion for a new trial based on inconsistent verdicts is a question of law, so we review for correction of legal error. *See Clinton Physical Therapy Servs. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006), *Westco Agronomy Co., LLC v. Wollesen*, 909 N.W.2d 212, 219 (Iowa 2017).

We also review a district court's ruling on a JNOV motion for errors at law. Iowa R. App. P. 6.907; *Smith v. Iowa State Univ. of Sci. and Tech.*, 851 N.W.2d 1, 18 (Iowa 2014). On that issue, we must decide if the siblings offered substantial evidence to justify submission of the tortious interference claim to the jury. *See id.* We view the evidence in the light most favorable to the siblings—as the nonmoving parties. *See id.* The court should grant JNOV only if reasonable minds would not accept the evidence as adequate to reach the same findings. *See Doe v. Cent. Iowa Health Sys.,* 766 N.W.2d 787, 790 (Iowa 2009).

We likewise review the order vacating the punitive-damage award for correction of legal error. *See Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005). But any award of punitive damages is discretionary, and we reverse only for an abuse of that discretion. *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.,* 788 N.W.2d 386, 395 (Iowa 2010).

## III.  Analysis

### A.  Tortious Interference with Inheritance

A person who by fraud or other tortious means intentionally prevents others from receiving from a third person an inheritance that they would otherwise have received is subject to liability for the loss of the inheritance. *Huffey v. Lea*, 491 N.W.2d 518, 521 (Iowa 1992) (citing *Restatement (Second) of Torts* § 774B (1979)).[2]

The district court instructed the jury that to recover under their tortious-interference-with-inheritance claim, the siblings had to prove these elements:

> (1) [The siblings] had an expectation that they were receiving inheritance from [Harriette] upon her death;
> (2) [Eva] knew of the expectation;
> (3)(a) [Eva] intentionally and improperly interfered with the expectation by undue influence or fraud, or
> (b) [The siblings] have established a fiduciary or confidential relationship between [Eva] and Harriette and [Eva] has failed to meet her burden of proof [to show by clear, satisfactory, and convincing evidence that she acted in good faith throughout the financial transactions and that Harriette acted freely intelligently, and voluntarily.][3]
> (4) The interference caused damage to [the siblings]; and
> (5) The amount of the damage.

The verdict form asked: "Did [Eva] intentionally and improperly interfere with the siblings' inheritance by undue influence or fraud?"  The jurors

---

[2] The supreme court differentiated between will contests, which focus on the testator's intent, and tortious interference, where the key issue is "the wrongdoer's unlawful intent to prevent another from receiving an inheritance."  *Huffey*, 491 N.W.2d at 521.

[3] The court instructed the jury if it found a confidential relationship existed between Harriette and Eva, it could presume their financial transactions were "the product of undue influence or fraud."  Then the burden of proof shifted to Eva to prove by clear, satisfactory, and convincing evidence that she acted in good faith throughout the financial transactions and Harriette acted freely, intelligently, and voluntarily.  The presumption was rebutted if Eva carried that burden.  Neither party challenges these jury instructions on appeal.

answered "yes." The jurors also decided a confidential relationship existed between Eva and Harriette. And then they answered "yes" to this question: "Did [Eva] establish by clear, satisfactory and convincing evidence that she acted in good faith throughout the financial transactions with Harriette Conner and that Harriette Conner acted freely, intelligently, and voluntarily?"

The siblings believe the jury correctly decided Eva engaged in tortious interference with their inheritance by undue influence or fraud. They argue steps (3)(a) and (3)(b) in the above-quoted jury instruction offer two independent paths for establishing tortious interference with inheritance. Under their reasoning, only under step (3)(b) (where a confidential relationship exists) does the jury have the opportunity to exonerate Eva by her showing of good faith. The siblings contend the district court was mistaken in using the jury's finding of Eva's good faith to cut off both paths to recovery. They assert "the jury's verdict that Decker committed tortious interference with inheritance against the Conner family, but not Harriette, is not inconsistent in light of the jury instructions and supporting law."

The siblings misconstrue the jury instructions. Steps (3)(a) and (3)(b) do not spell out alternative means of committing tortious interference with inheritance. Rather, step (3)(a) lists two ways to intentionally interfere—"by undue influence or fraud." *See Huffey*, 491 N.W.2d at 521 (describing "necessary proof in an action for intentional interference with a bequest" as the use of "fraud, duress, or other tortious means"). Then step (3)(b) (when read in conjunction with a companion instruction) allows the jury to presume the existence of either undue influence or fraud if Eva had a confidential

relationship with Harriette.[4]  In that instance, the burden shifted to Eva—as the recipient of the bank holdings—to show the fairness of the transactions by clear, satisfactory and convincing evidence.  *See Laufert v. Wegner*, 62 N.W.2d 758, 759 (Iowa 1954).  Once Eva met her burden to show she acted in good faith and that Harriette did not succumb to undue influence in making her financial decisions, then the siblings failed in their proof of intentional interference.[5]

And contrary to the siblings' contention, the jury's answers on the verdict form were "so logically and legally inconsistent" that they cannot be reconciled. *See Hoffman v. Nat'l. Med. Enters. Inc.*, 442 N.W.2d 123, 127 (Iowa 1989) (reiterating test for inconsistent verdicts).  The only financial transactions at issue were the joint accounts.  Eva cannot have acted in good faith in regard to those accounts (with Harriette acting freely, intelligently, and voluntarily) and simultaneously have interfered with the siblings' inheritance of the funds in those accounts by committing acts of fraud or by exerting undue influence on Harriette.

---

[4] Step 3(b) is a burden-shifting measure that enabled the siblings to benefit from the presumption that Eva took advantage of her dominant influence over Harriette.  *See Oehler v. Hoffman*, 113 N.W.2d 254, 256 (Iowa 1962) ("The gist of the doctrine of confidential relationship is the presence of a dominant influence under which the act is presumed to have been done.  [The] [p]urpose of the doctrine is to defeat and correct betrayals of trust and abuses of confidence."); *see also Estate of Herm*, 284 N.W.2d 191, 200 (Iowa 1979) (finding transactions presumptively fraudulent based on confidential relationship between conveyor and alleged recipient).

[5] The siblings contend the jury could have found Eva committed tortious interference with inheritance by acts directed against them, separate from her undue influence on Harriette.  But the siblings' petition alleged tortious interference based strictly on the relationship between Eva and Harriette and their joint ownership of the bank accounts. And the siblings presented no evidence at trial that Eva committed other acts of fraud against them.

After finding that inconsistency, we turn to the question of remedy. The verdict form requires the jury to reach "special written findings" (in other words, special verdicts) on the contested elements of intentional interference. *See* Iowa R. Civ. P. 1.933. When, as here, the jury gives inconsistent answers on a special verdict form, the district court has two choices: ask the jury to resume deliberations or grant a new trial. *See* Iowa R. Civ. P. 1.934; *Clinton Physical Therapy Servs. P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 612 (Iowa 2006) (explaining "inconsistent answers that constitute special findings cannot support a judgment").

But the district court did not grant a new trial on the intentional interference claim. Instead it ruled "no damage award may be based on this theory of recovery." Like the parties, we read the district court's ruling on this point as the grant of Eva's JNOV motion.

In reviewing the grant of JNOV, we must decide whether substantial evidence exists to support the elements of the siblings' intentional-interference claim, justifying the court's submission of that cause of action to the jury. *See Doe v. C. Iowa Health Sys.*, 766 N.W.2d 787, 790 (Iowa 2009). Even viewing the evidence in the light most favorable to the siblings, this record lacks substantial proof Eva engaged in fraud or undue influence. Eva agreed to Harriette's request that she be a joint holder on Harriette's bank accounts. Eva's husband, Ivan, had been a joint holder on his mother's bank accounts before his death. The siblings did not identify any fraudulent acts by Eva. When counsel asked LinDa: "What evidence do you have that Eva Decker in any way exerted any undue influence on your mother?" LinDa responded:

"Can't answer that." Dale testified he wasn't around to see any acts of undue influence or fraud. And Neil candidly testified his mother made her own financial decisions: "She did what she wanted. That was her money, her cash. Whatever she wanted to do, she did on her own." On this record, the district court properly granted Eva's JNOV motion on the intentional-interference claim.

## B. Punitive Damages

The siblings next contend the district court erred in vacating the punitive-damage award.[6] After granting JNOV on the intentional-interference claim, the district court reasoned the remaining verdicts on unjust enrichment and mistake did not support a recovery of punitive damages. The siblings believe the district court erroneously decided that because a claim for tortious

---

[6] The court instructed the jury that it could award punitive damages if the siblings have proven by a preponderance of clear, convincing and satisfactory evidence [Eva's] conduct constituted a willful and wanton disregard for the rights or safety of another and caused actual damage to [the siblings.] Punitive damages are not intended to compensate for injury but are allowed to punish and discourage [Eva] and others from like conduct in the future. You may award punitive damages only if [Eva's] conduct warrants a penalty in addition to the amount you award to compensate for [the siblings'] actual injuries.
     There is no exact rule to determine the amount of punitive damages, if any, you should award. You may consider the following factors:
1. The nature of [Eva's] conduct that harmed [the siblings.]
2. The amount of punitive damages that will punish and discourage like conduct by [Eva]. You may consider [Eva's] financial condition or ability to pay. You many not award punitive damages solely because of [Eva's] wealth or ability to pay.
3. [The siblings'] actual damages. The amount awarded for punitive damages must be reasonably related to the amount of actual damages you award to [the siblings.]
4. The existence and frequency of prior similar conduct.

interference could not stand, the punitive-damage award likewise fell. The siblings insist a jury may award punitive-damages as a stand-alone claim by finding the defendant acted with a willful and wanton disregard for the rights of another. But the siblings cite no case law to support their stand-alone proposition. Absent any authority, we decline to entertain their position.

In fact, the wording of Iowa Code section 668A.1(1) (2018) undermines the siblings' argument. That section directs the district court to instruct the jury to answer special interrogatories "[i]n a trial of a claim involving the request for punitive or exemplary damages." Iowa Code § 668A.1(1). To award punitive damages, the jury must decide "[w]hether, by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant *from which the claim arose* constituted willful and wanton disregard for the rights or safety of another." *Id.* § 668A.1(1)(a) (emphasis added). That provision contemplates the existence of an underlying claim, not a free-floating bid for punitive damages based on willful and wanton conduct. *See generally Holcomb v. Hoffschneider*, 297 N.W.2d 210, 214 (Iowa 1980) (explaining fraud is a recognized ground for punitive damages, but not every fraud case permits such an award; "circumstances of aggravation are present in the fraud cases allowing such damages").

We see no error in the district court's finding that punitive damages were unavailable for the remaining claims of unjust enrichment[7] and mistake.[8] Those claims did not require proof that Eva acted with any malice. *See McClure v. Walgreen Co.*, 613 N.W.2d 225, 230 (Iowa 2000) (explaining punitive damages are only available when the plaintiff can show actual or legal malice because they serve as a form of punishment and to deter others' egregious conduct). Instead, the doctrine of unjust enrichment is "based upon the concept of implied contract." *Kunde v. Est. of Bowman*, 920 N.W.2d 803, 807 (Iowa 2018). And when a claim for punitive damages arises out of a contract action, an award of punitive damages is allowed only when the breach constitutes an intentional tort, and is committed maliciously, in a manner that meets the standards of Iowa Code section 668A.1. *See Milas v. Soc'y Ins.*, No.16-2148, 2017 WL 6513967, at *3 (Iowa Ct. App. Dec. 20, 2017), *aff'd by an equally divided court*, 2019 WL 2313392, at *1 (Iowa, 2019); *see also Edible Arrangements Intern., Inc. v. Chinsammy*, No. 10-3214-cv, 2011 WL 5222777,

---

[7] To recover under their unjust enrichment claim, the siblings had to show:
  1. [Eva] was enriched by taking joint ownership of Harriette Conner's certificates of deposits and personal bank accounts;
  2. [Eva's] enrichment was at the expense of [the siblings];
  3. It would be unjust to allow [Eva] to retain the monies under the circumstances; and
  4. The amount of damages.

[8] To recover under their mistake claim, the siblings had to show:
  1. Hariette Conner was mistaken as to a basic assumption regarding facts upon which she relied in making the joint ownership designations.
  2. The effect of the mistake is that the joint ownership designations defeated Harriette Conner's true intentions.
  3. [Eva] need not have been aware that Harriette Conner made a mistake. Proof of both of these propositions must be clear, convincing, and satisfactory evidence.

at \*2 (2nd Cir. Nov. 3, 2011) (finding punitive damages not available in unjust enrichment actions because "relief comes in the form of restitution").  Similarly, "[n]o punitive damages are allowed with a 'mere mistake.'"  *Cedar Falls Bldg. Ctr., Inc. v. Vietor*, 365 N.W.2d 635, 640 (Iowa Ct. App. 1985).

Because the siblings did not prove their claim of intentional interference, we affirm the district court's decision to vacate the award of $15,066 in punitive damages.

## C. Compensatory Damages and Conditional New Trial

In addition to the punitive damages, the jury awarded a total of $188,192 in compensatory damages.  The district court also disagreed with that amount and offered two alternatives—new trial or remittitur.

The district court found the amount in dispute could not exceed $173,266.96—the amount in Harriette's bank accounts that passed to Eva. The district court pointed out the trial and the verdict forms focused on those accounts.  The court relied on *Iowa Waste Systems., Inc. v. Buchanan County.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000), stating, "damages under a claim of unjust enrichment are limited to the value of what was inequitably retained." Here, the value of what was inequitably retained equaled three quarters of $173,266.96 or $129,950.  The court also found the siblings paid, from the residuary portion of the estate according to the will, approximately $12,650 of the inheritance taxes related to the bank accounts Eva received.  So the court decided the compensatory damages should not exceed $142,600.  We agree with the district court's calculations.

The district court offered the siblings the alternative resolutions of reducing their judgment to $142,600 or having a new trial limited to the issue of actual damages. *See* Iowa Rs. Civ. P. 1.1004(6), 1.1010. "The trial court has broad discretion in granting a new trial conditioned upon a remittitur to a set amount. We will not interfere with its ruling on a motion for new trial unless there appears to have been an abuse of discretion." *Grant v. Thomas*, 118 N.W.2d 545, 548 (Iowa 1962). Here, the jury's award of compensatory damages was not supported by substantial evidence. We find no abuse of discretion in the court's order for conditional new trial or remittitur.

**AFFIRMED.**